**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

JUAN L. RAMÍREZ PEÑA,

      Plaintiffs,

          v.                    CIVIL NO.: 11-2127 (MEL)

COMMONWEALTH OF PUERTO RICO, et al.,

      Defendant.

**OPINION AND ORDER**

**I.**    **FACTUAL AND PROCEDURAL BACKGROUND**

On July 16, 2011, plaintiff Juan Ramírez Peña filed suit under Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141, in the Commonwealth Court of First Instance, San Juan Part, for damages allegedly sustained when his car fell into a hole while he was driving in front of a Eurobank in San Juan. Docket No. 8-1. The complaint originally named as defendants the Commonwealth of Puerto Rico ("the Commonwealth"), the Puerto Rico Department of Transportation and Public Works ("DTPW"), and the Puerto Rico Aqueduct and Sewer Authority ("PRASA"), but subsequently was amended to include Eurobank. Docket No. 1. Because the Federal Deposit Insurance Corporation (the "FDIC") had been appointed receiver of Eurobank on April 30, 2010, the FDIC timely removed the case on November 21, 2011 under 12 U.S.C. § 1819(b)(2), which confers federal jurisdiction over any case in which the FDIC is a party and allows removal when the FDIC is added or substituted as a party.

Subsequently, the FDIC made a formal determination that insufficient assets existed in the receivership of Eurobank, San Juan, to make any distribution on general unsecured claims,

1

and that such claims would thus "recover nothing and have no value."  See 76 Fed. Reg. 50733 (Aug. 16, 2011).  Consequently, the FDIC filed a motion to dismiss arguing that 12 U.S.C. § 1821(i)(2), which limits the FDIC's liability to the assets of the financial institution in receivership, made the suit against it an exercise in futility.  Pointing out that Eurobank in receivership had no assets to satisfy unsecured claims such as plaintiff's, the FDIC argued that it would be unable to provide any remedy to plaintiff and that the claims against it were therefore moot.  Docket No. 13.  Shortly thereafter the Commonwealth and DTPW also filed a motion to dismiss on Eleventh Amendment immunity grounds.  Docket No. 29.

On March 1, 2012, both motions to dismiss were granted, leaving PRASA as the only defendant in the case at the federal forum.  Docket No. 32; Docket No. 35; Docket No. 36.  PRASA then filed a motion to remand, arguing that, without the FDIC as a party, the subject matter jurisdiction granted by 12 U.S.C. § 1819(b)(2)(A) is also gone.  It therefore moves the court to remand this case pursuant to 28 U.S.C. § 1447(c), which obliges a district court to remand a case if, at any time before judgment, it appears that the court lacks subject matter jurisdiction.  28 U.S.C. § 1447(c).[1]  PRASA adds that plaintiff may re-file his suit against the Commonwealth and DTPW in state court, where they are not shielded from suit by the Eleventh Amendment, meaning that that there will be two parallel actions if the instant case is not remanded.  Docket No. 38.  PRASA therefore argues that remand will serve the interests of judicial economy and efficiency, whereas maintaining the case in this court would unfairly force them to litigate in two separate venues.  Docket No. 38.

---

[1] PRASA also argues, in the alternative, that remand would also be appropriate under 28 U.S.C. § 1441(c), which (prior to an amendment whose effective date post-dates this case) provided that when a removable federal claim is joined to non-removable state law claims, the district court has the discretion to remove the entire action or to remove only the federal claims and remand the state claims.  Such provision, however, is not relevant here as neither party disputes that the court properly had jurisdiction over the entire action at the time of removal.

Plaintiff has opposed the motion to remand, arguing that the court has original subject matter jurisdiction over the action even in the FDIC's absence.  Docket No. 39.  Therefore, plaintiff argues, this court's exercise of its jurisdiction is mandatory and the action cannot be remanded.  Docket No. 39.  For the reasons to set forth below, the court grants PRASA's motion and remands this case to the Puerto Rico Court of First Instance, San Juan Part.

## II.   ANALYSIS

The jurisdictional provision at the heart of this controversy provides, in its pertinent part, that " . . . all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States."  12 U.S.C. § 1819(b)(2)(A).  It was enacted as part of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), Pub. L. No. 101-73, 103 Stat. 183 (1989), "a comprehensive regulatory scheme that Congress passed in response to the savings-and-loan crisis of the late 1980s and early 1990s."  Adair v. Lease Partners, Inc., 587 F.3d 238, 241 (5th Cir. 2009).  One of that Act's main objectives was to "expand, enhance and clarify enforcement powers of the financial institution regulatory agencies," H.R. Rep. 101-54(I), at 311 (1989), reprinted in 1989 U.S.C.C.A.N. 86, 107.  The statute at issue serves that purpose by providing a "federal forum and a uniform body of federal law for [these agencies'] receivership activities."  New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1500 (3d Cir. 1996).

The statute does not indicate, however, what happens to the court's jurisdiction when the FDIC is no longer a party to the case, either when it has been substituted by a successor in interest, or because it has been dismissed from the action altogether, and this ambiguity has engendered a difference of opinion in the federal courts.  Of the few circuit courts to address this question, none have held that dismissing the FDIC strips the court of jurisdiction, mandating

remand under 28 U.S.C. § 1447(c); rather, they have disagreed as to "the kind of subject matter jurisdiction the district courts retain." Destfino v. Reiswig, 630 F.3d 952, 958 (9th Cir. 2011) (discussing split).[2]  Three circuits hold that the entire suit remains within the district court's original jurisdiction, while one holds that the district court retains only supplemental jurisdiction over the state law claims.  Id.  Compare Adair v. Lease Partners, Inc., 587 F.3d 23, 242-43 (5th Cir. 2009) (original jurisdiction); Casey v. F.D.I.C., 583 F. 3d 586, 591 (8th Cir. 2009) (same); F.D.I.C. v. Four Star Holding Co., 179 F. 3d 97 (2d Cir. 1999) (same), with New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F. 3d 1492, 1503-04 (3d Cir. 1996) (supplemental jurisdiction).  See also Mill Invs., Inc. v. Brooks Woolen Co., 797 F. Supp. 49 (D. Me. 1992) (holding that court retained only supplemental jurisdiction after FDIC assigned its interest in promissory note at issue and was thus no longer a party to the suit).[3]  The difference between these two approaches is, "of course, that if the claim is within the district court's original jurisdiction, then it has no authority to remand, while it has discretion to remand if the claim falls within its supplemental jurisdiction." Destfino, 630 F.3d at 958.

Both the rationale and the policy reasons behind the majority position are inapplicable to the instant case.  The courts in the majority rely on the rule that jurisdiction should be measured at the time of filing (or at the time of removal), as well as policy concerns about protecting assignees of receivership assets.  See, e.g., Federal Sav. & Loan Ins. Corp. v. Griffin, 935 F.2d 691 (5th Cir. 1991) (basing holding on time of filing rule, and noting that "policy reasons for

---

[2] At least two district courts have held that dismissal of the FDIC destroys federal question jurisdiction, mandating dismissal under 28 U.S.C. § 1447(c).  See Estate of Rains v. Dinges, 769 F. Supp. 353 (D. Kan. 1991); Firstsouth, F.A. v. LaSalle Nat. Bank, No. 86 C 10247, 1991 WL 188649 (N.D. Ill. Sept. 11, 1991).

[3] Although neither the First Circuit nor this court have addressed the question at hand, at least one decision from this court has indicated a willingness to follow the minority position.  See Arends v. Eurobank & Trust Co., 146 F.R.D. 42, 46-7 (D.P.R. 1993) (denying motion remand to state court having decided that the FDIC was a proper intervenor, but indicating that if a court does decide to "dismiss the FDIC as an intervenor," doing so would "thereby erod[e] the foundation of federal jurisdiction.") (dictum).

insuring federal jurisdiction over cases involving the actions of failed thrifts continue when the FDIC is voluntarily dismissed as a party and the owner of the failed thrift's assets remain.").   In the First Circuit, however, the time of filing rule is applied narrowly in federal question cases. See ConnectU LLC v. Zuckerberg, 522 F.3d 82 (1st Cir. 2008).   Additionally, the policy considerations that would serve the FIRREA's purpose of expanding the FDIC's regulatory enforcement power are absent here.  See New Rock, 101 F.3d at 1500-01 (noting that providing a federal forum for financial regulatory agencies assist  them to "successfully manage[ ] a thrift and either restore[ ] it to solvency or transfer[ ] its assets to willing buyers.").  Therefore, as explained below, the approach taken by the Third Circuit and the District of Maine is more appropriate here, and the court thus has only supplemental jurisdiction over this action.

In holding that district courts retain original jurisdiction after the FDIC is dismissed, the Fifth Circuit relied heavily on the age-old rule that the "jurisdiction of the Court depends on the state of things at the time of the action brought," Mollen v. Torrance, 22 U.S. 537, 539 (1824). See Griffin, 935 F. 2d at 696 ("The power to remove is evaluated at the time of removal.  The dismissal of one of the parties by the time of appeal does not affect the propriety of removal."); see also Adair, 587 F.3d at 244 ("As Griffin is Fifth Circuit precedent, we are bound by its holding.").  But see Adair, 587 F.3d at 246 (Jolly, J.) (concurring in the judgment, but opining that jurisdiction was only supplemental because "the text 'is a party' [does not] mean that all state-law claims in any case to which the FDIC ever was a party continue to arise under federal law after dismissal of all federal interests," and "[t]he statute does not, through some feat of alchemy, make the case's state-law claims federal-law claims").  The Eighth Circuit also seems to have implicitly taken this position, reasoning that the language of the statute indicates that once the FDIC is a party, the entire action is deemed to "arise under the laws of the United

States," and is therefore within the original jurisdiction of the district court and holding, with no further explanation, that this jurisdiction does not disappear when the FDIC is gone.  Casey, 583 F.3d at 591 ("The subsequent dismissal of the claim against the FDIC did not defeat that jurisdiction or withdraw the court's jurisdiction over the state law claims filed against [the other defendants.").  The First Circuit, however, has pointed out that the policy concerns behind the time of filing rule "are largely absent in federal question cases."  ConnectU LLC v. Zuckerberg, 522 F.3d 82, 93 (1st Cir. 2008).  Rather, the rule applies "most obviously in diversity cases, where [it] originated, and where heightened concerns about forum-shopping and strategic behavior offer special justifications for it."  Id. at 92 (internal citations omitted).  Indeed, such concerns are not present in this federal question case.  There is no indication that the FDIC was added to or dismissed from this case for the purpose of creating or destroying federal jurisdiction.  Rather, it became a party due to Eurobank's failure and its concomitant appointment as receiver, and it was dismissed because of that institution's lack of assets.  See Docket No. 1, Docket No. 35.  All of these events were beyond the control of any of the parties.  As in many federal question cases, rigid application of the time of filing rule "is inapposite here." Id.  Therefore, the time of filing rationale used by the Fifth and Eight Circuits is not compelling here.

Similarly, the policy reasons that motivated the courts in the majority to exercise original jurisdiction after the FDIC's dismissal are not present in this case.  In Griffin, the Fifth Circuit reasoned that Congress intended for § 1819 provide the same protection to an assignee of a failed financial institution's assets that it gives to the FDIC, allowing it to remain in Federal court and

have access to certain federal defenses.[4]  <u>Griffin</u>, 935 F.2d at 696.  ("The policy reasons for insuring federal jurisdiction continue over cases involving the actions of failed thrifts continue when the FDIC is voluntarily dismissed as a party and the owner of the failed thrift's assets remain.").  Following <u>Griffin</u>, and relying more on policy reasons than the time of filing rule, the Second Circuit also held that maintaining original jurisdiction after the FDIC has assigned a failed financial institutions' assets serves the agency's interests in efficient management and disposal of receivership assets.  <u>See</u> <u>Four Star</u>, 178 F. 3d at 100-01 ("Adopting a rule which would make federal jurisdiction contingent on who owned an interest in certain property at a particular time could well have the effect of deterring normal business transactions during . . . litigation, and could also deter transactions by the FDIC that presumably are in the public interest.") (internal citations omitted).  Unlike in <u>Griffin</u> and <u>Four Star Holdings</u>, there is no FDIC successor in interest that is a party to this case.  Any financial institution that may have taken over Eurobank's assets has no place in this litigation due to the determination that unsecured claims, such as plaintiff's tort claims, cannot be satisfied by said assets.  For that reason, the FDIC, as its receiver, was dismissed from this action altogether.  <u>See</u> Docket No. 35.  Neither of the remaining parties would benefit in the way FIRREA intended by continuing to litigate in this federal forum.  Accordingly, the policy reasons behind the majority position are inapposite here.

More appropriate is the view taken by the Third Circuit and the District of Maine.  In <u>Mill Investments</u>, the FDIC was dismissed, but its successor in interest to the mortgage at issue remained.  797 F. Supp. at 50-51.  The court agreed with both parties' view that it retained

---

[4] Specifically, the court was referring to the doctrine established by <u>D'Oench Duhme & Co. v. FDIC</u>, 315 U.S. 447 (1942), that protects the FDIC and its assignees from unrecorded side agreements not reflected in the bank's records, allowing the FDIC to rely on the official bank records to set forth the rights and obligations of the bank and those to whom it lends money.

supplemental jurisdiction at this point.  Id. at 52 ("While application of the concept of supplemental jurisdiction here is somewhat strained since there are not two discrete groups of claims, the Court is satisfied that the intent of the statute is broad enough to encompass the type of claims remaining here.").  However, the court found it appropriate to remand the case under 28 U.S.C. § 1367(c), which allows a district court, in its discretion, to remand when it retains only supplemental jurisdiction over state law claims if, *inter alia*, it has "dismissed all claims over which it had original jurisdiction."  Id. at 53-55.  Noting that "FIRREA was enacted to deal with a banking crisis and to smooth the modalities by which rehabilitation might be accomplished," the court held that "this policy is not advanced in any significant way by retaining federal jurisdiction once the failed bank's assets have been assigned to a private company."  Id. at 53.  The court also noted that there is no indication in FIRREA that "Congress intended every case that formerly included the FDIC to be adjudicated in federal court."  Id. at 54.  Accordingly, it exercised its discretion to remand the case.

New Rock also looked to the language and legislative purpose of the FIRREA in holding that the statute does not provide continuing original jurisdiction once the FDIC is dismissed, but that a court may, in its discretion, continue to exercise supplemental jurisdiction.  101 F.3d at 1502-05.  First, it echoed Mill Investment's policy concerns, as well as concerns about the limited nature of federal jurisdiction on Congressional intent for the statute to confer original jurisdiction over all cases where the FDIC "was a party," and not just where it "is a party."  Id. at 1500 ("The role of federal jurisdiction in assisting the [FDIC] in its management role and in disposing of thrift assets also indicates that once this has been accomplished, the reasons for federal jurisdiction end."  However, further examining FIRREA's legislative purpose and history, the court found that Congress did intend for federal courts to have the power to decide

whether, in their discretion, they would exercise supplemental jurisdiction once the FDIC was gone.  Id. at 1508 ("This triggers a discretionary decision on whether jurisdiction over a state law claim should be declined pursuant to § 1367(c).").  In so holding, the court reasoned that

> a contrary conclusion would seriously limit the ability of Congress to provide a federal forum for litigation initiated by federally-created entities. For example, it would prevent Congress from deciding, after initially putting the case in federal court, that judicial economy required that that court have the discretion to keep the case. Congress would not even have the power to give continuing jurisdiction over the case for reasons related to the interests of the jurisdiction-conferring party. In this case, for example, the [Resolution Trust Corporation] may have more difficulty disposing of its assets if the purchaser knows that any litigation concerning those assets must be started anew in state court.

Id. at 1507.  In that case, the Third Circuit decided that it was appropriate to exercise supplemental jurisdiction because the district court had already invested considerable judicial resources and had effectively resolved the case by granting summary judgment to New Rock, the FDIC's successor in interest.

The procedural posture of the instant case is quite different.  The case is still in its initial stages and neither remaining party has filed any dispositive motion on the merits.  Discovery of evidence is yet to begin.  Docket No. 45.  Moreover, because plaintiff can proceed against two of the original defendants, DTPW and the Commonwealth, in state court only, judicial economy is served by remanding the action so that all defendants may be sued in one action.  Additionally, as discussed already, the policy concerns motivating FIRREA's grant of federal jurisdiction that concerned courts on both sides of the circuit split are irrelevant here, as no successor in interest to Eurobank's assets remains in the case.

Following the Third Circuit's holding gives a district court the flexibility to maintain or decline to exercise jurisdiction depending on the facts of the individual case.  This position best serves the objectives of FIRREA, by allowing the court to exercise jurisdiction when the

interests of the FDIC or its successor may be at stake, but to remand where, as here, such interests are moot.  It also promotes the most efficient use of judicial resources, because the court may retain jurisdiction or remand depending on the procedural posture of the case and the resources that have been expended by the court and the parties.  Taking all of these factors into consideration, the court finds no compelling reason to exercise supplemental jurisdiction over this case.

## III. CONCLUSION

Based on the foregoing, defendant PRASA's motion to remand, Docket No. 38, is GRANTED and this action is hereby REMANDED to the Puerto Rico Court of First Instance, San Juan Part.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of June, 2012.

s/Marcos E. López
U.S. Magistrate Judge